UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DON HAMILTON, *et al.*,

      Plaintiffs,

      v.

UNITED STATES DEPARTMENT
OF TRANSPORTATION, *et al.*,

      Defendants.

NO.  CV-08-328-RHW

**ORDER ON CROSS-MOTIONS
FOR SUMMARY JUDGMENT**

      Before the Court are Plaintiffs' Motion for Summary Judgment (Ct. Rec. 35), Defendants' Motion for Summary Judgment (Ct. Rec. 61), and the parties' miscellaneous motions to file excess pages and to expedite (Ct. Recs. 40, 41, 53, and 56). A hearing on these motions was held on March 4, 2010. Plaintiffs were represented by Richard K. Eichstaedt; Defendants were represented by Assistant United States Attorney Andrew S. Biviano.

**BACKGROUND**

      This an administrative review case in which Plaintiffs claim that Defendants violated the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321-4347, and the Department of Transportation Act (DTA), 49 U.S.C. § 303, by failing to adequately consider the environmental impacts of a planned road project. The project at issue is the Bigelow Gulch Road/Forker Road Urban Connector, a road expansion plan that is part of the Spokane Corridor Project, connecting I-90 to U.S. Highways 2 and 395. The current road is approximately 8.5 miles long and two lanes wide, with posted speed limits of 35-45 mph and 1 – 3-foot paved shoulders. The road is predominantly bordered by  farms and large residential lots. As part of

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** * 1

updating its comprehensive plan in 1997 and 1998, Spokane County identified the road as a high-volume traffic corridor, with transportation demand exceeding vehicle capacity. A study also identified significant safety concerns with the road as currently configured, including limited passing opportunities that increase the chance of head on collisions, and sharp curves that pose increased risk during icy conditions. The road's current collision rate is significantly higher than the average for state highways in eastern Washington, and the fatal collision rate is 3.6 times higher than the average. To address these concerns, Spokane County proposed the current project, with the backing and assistance of federal Defendants.

Defendants first prepared an Environmental Assessment (EA) for the project in 2006. Defendants revised the document in response to public comments and eventually issued a final EA, along with a Finding of No Significant Impact (FONSI), in 2007 and 2008. Plaintiffs claim these documents are flawed and that Defendants acted arbitrarily and capriciously by issuing and relying on them.

Plaintiffs allege that Defendants violated NEPA by failing to prepare an Environmental Impact Statement (EIS) instead of an EA at the beginning of the process. Plaintiffs also assert that the EA fails to take a "hard look" at the project's impacts, including the cumulative impacts of and alternatives to the project. Plaintiffs also claim that Defendants violated NEPA by issuing a FONSI rather than an EIS given the impacts disclosed in the final EA. Finally, Plaintiffs argue that Defendants violated § 4(f) of the DTA by failing to consider feasible and prudent alternatives. For the reasons set forth below, the Court rejects each of these arguments.

## APA STANDARD OF REVIEW

The Court's standard of review here is set forth in the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. Under the APA, the Court must determine whether the Board's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." If the Court can "examine the relevant data

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** * 2

1    and articulate a rational connection between the facts found and the choice made,"

2    Defendants' decisions should be affirmed. *Friends of Yosemite Valley v.*

3    *Kempthorne*, 520 F.3d 1024, 1032 (9th Cir. 2008) (quoting *Pub. Citizen v.*

4    *DOT*,316 F.3d 1002, 1020 (2003)).

5                                    ANALYSIS

6             Before turning to Plaintiffs' substantive arguments, the Court will address

7    two preliminary matters. First, Plaintiffs argue that the length of the EA here –

8    more than 300 pages, not including appendices – should signal the Court that an

9    EIS is required. Plaintiffs cite guidelines from the Council on Environmental

10   Qualities suggesting that EAs should generally not exceed 10-15 pages in length,

11   and that a lengthier EA may indicate that a project's impacts are significant. 46

12   Fed. Reg. 18026, 18037. While the Court agrees that an overlong EA may be a

13   cause for concern, the Court finds that length itself is far from dispositive. The

14   Court declines to adopt any kind of brevity rule that would discourage agencies

15   from issuing lengthy EAs. Such a rule would create a perverse incentive for

16   agencies to produce less thorough and detailed NEPA documents, which would run

17   counter to the policy animating NEPA.

18            Second, Plaintiffs make much of a October 10, 2006, memo from agency

19   counsel for Defendant Federal Highway Administration (FHWA), commenting on

20   the draft EA. Throughout their briefing and during oral argument, Plaintiffs

21   frequently cite agency counsel's criticisms of the draft EA and urge the Court to

22   construe these criticisms as admissions that the EA is defective. The Court finds

23   two problems with Plaintiffs' argument. First, Plaintiffs repeatedly fail to

24   acknowledge that agency counsel was commenting on the *draft* EA. Not only did

25   Plaintiffs' briefing fail to mention this critical fact, but Plaintiffs also fail to explain

26   why revisions to the final EA that were made in response to comments from

27   agency counsel were not sufficient to address those concerns. Second, the Court

28   finds that it would be poor public policy to construe agency counsel's criticisms as

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT * 3**

admissions. By providing a road map for members of the public, such as Plaintiffs, to challenge Defendants' compliance with environmental laws, agency counsel's memo displays exactly the kind of transparency and self-criticism those laws are intended to force.

Nonetheless, Defendants' commendable honesty does not answer the ultimate question before the Court: whether the final EA and FONSI are legally sufficient. The Court will address Plaintiffs' arguments on that issue in sequence.

(1) Initial decision to prepare an EA rather than an EIS

Plaintiffs begin by noting NEPA's basic framework, which calls for the preparation of an EIS for major federal actions that significantly impact the environment, but allows for the preparation of an EA where an agency is unsure what impacts a project may entail. Plaintiffs argue that Defendants' initial decision here not to prepare an EIS and to instead opt for an EA was itself a violation of NEPA. Plaintiffs focus their argument on FHWA's own regulations, which set forth three categories of actions (Classes I– III) for which environmental statements are required. First, so-called "Class I" actions "normally" require an EIS, and include "A highway project of four or more lanes on a new location." 23 C.F.R. §771.115(a)(2). Second, Class II actions are those that clearly have no impact and require no NEPA documentation. Third, Class III actions are those "in which the significance of the environmental impact is not clearly established," which requires the preparation of an EA. 23 C.F.R. § 771.115(c).

Plaintiffs argue that these regulations create a presumption that FHWA should normally prepare an EIS where a project involves a new four-lane highway, citing *Davis v. Mineta*, 302 F.3d 1104, 1117 (10th Cir. 2002). Plaintiffs argue that the presumption applied here because the Bigelow Gulch project involves construction of a new four-lane highway for 29% of its length, and that Defendants failed to rebut the presumption.

Defendants first point out that two district courts have found that 23 C.F.R. §

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** * 4

771.115 does not automatically require the preparation of an EIS for a new four-lane highway project. *Burkholder v. Wykle*, 268 F.Supp.2d 835, 842 (N.D. Ohio 2002); *Lakes Region Legal Defense Fund, Inc. v. Slater*, 986 F.Supp. 1169, 1198 (N.D. Iowa 1997). Regardless, Defendants argue that under FHWA's regulations this project falls into the Class III "grey area", because 71% of the project follows the existing roadway and involves only minor realignments.

The Court finds this kind of initial determination to be well within the agencies' discretion. *See Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 377 (1989) (holding that factual disputes implicating substantial agency expertise are committed to agencies' discretion). A project comprising an update of 71% of an existing road, and 29% new construction, does not clearly fall into any of the three categories set forth in the FHWA's regulations. Given this uncertainty, the Court cannot find the initial decision to prepare an EA to be arbitrary or capricious. Therefore, the Court rejects this portion of Plaintiffs' argument.

The more difficult question is whether, after reviewing the EA, the agencies should have issued an EIS rather than a FONSI. That question cannot be answered until the EA and FONSI are examined in more detail, below.

(2) Whether Defendants took a "hard look" at the environmental impacts

"NEPA does not mandate particular results, but simply provides the necessary process to ensure that federal agencies take a hard look at the environmental consequences of their actions." *Metcalf v. Daley*, 214 F.3d 1135, 1141 (9th Cir. 2000) (internal quotation omitted). This is a deferential standard, requiring the Court to defer to a "fully informed and well-considered" decision but to set aside a "clear error of judgment." *Id.* The Court reviews Defendants' decision to issue a FONSI rather than an EIS under the arbitrary and capricious standard, and must "carefully review the record to ascertain whether the agency decision is founded on the reasoned evaluation of the relevant factors." *City of Las Vegas, Nev. v. F.A.A.*, 570 F.3d 1109, 1115 (9th Cir. 2009).

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT * 5**

Plaintiffs argue that Defendants failed to take a hard look at the following areas of impacts: (a) wetlands; (b) noise; (c) community; and (d) visual.

A. *Wetlands Impacts*

First, the Court notes that Plaintiffs' arguments regarding wetlands impact rely heavily on extra-record material (*viz.*, two declarations, with exhibits, that accompany their statement of facts, Ct. Recs. 37 and 38). The Court previously denied Plaintiffs' motion to admit extra-record material, finding that the two emails and draft plan Plaintiffs submitted were inadmissible hearsay (Ct. Rec. 33). Plaintiffs have attempted to cure some of those problems by presenting the extra-record material in the form of declarations and exhibits, but they have failed to move the Court a second time to admit this material. Defendants thus move to strike, and alternatively urge the Court to consider the extra-record declaration of a Spokane County engineer (Ct. Rec. 59-2, Declaration of Chad Coles). The Court declines to consider any extra-record material as procedurally improper, and limits its review to the record before the agency at the time of its decision. *See Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. USDA*, 499 F.3d 1108, 1117 (9th Cir. 2007).

Plaintiffs argue, in essence, that Defendants have simply deferred any substantive wetlands analysis to a later stage of the project. Plaintiffs seize on the following quote from the EA: "Detailed field delineation, description, and categorization of all wetlands would occur through the design and permitting stages." (Administrative Record ["AR"] vol. 21, BG-7823). Plaintiffs also cite agency legal counsel's response to this language: "Shouldn't we know what wetland impacts the project will have in order to determine whether the project will have significant impact?" (AR BG-9289). Plaintiffs argue that because of the decision to defer substantive analysis, Defendants completely overlooked an entire wetland at the southwest corner of Bigelow Gulch and Old Argonne Roads, which is the subject of the declarations Plaintiffs submitted.

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT * 6**

1    Defendants first point out that the agency attorney's comment Plaintiffs

2    quote was, like many other such quotations, in response to the *draft* EA in 2007,

3    and that the final EA was substantially revised in response to this and similar

4    comments. Also, Defendants point out that the final EA does in fact contain an

5    extensive analysis of wetlands impact, and concludes that the project would impact

6    0.71 acres of wetland, but create 2.01 acres of wetland in mitigation. Finally,

7    Defendants argue that Mr. Coles' declaration demonstrates that the "overlooked"

8    wetland is not in the project area and would not be negatively impacted in any

9    event. (Ct. Rec. 59-2).

10    The Court finds that Defendants have the better of the two arguments here.

11    As Defendants point out, the mere fact that the EA acknowledges that additional

12    wetlands analysis will occur in the future does not mean that the present EA does

13    not include substantive wetlands analysis. The EA includes a relatively extensive

14    analysis of what wetlands would be affected, what effects might occur, and what

15    mitigation measures would be practicable. (AR BG7822-7840). The EA also

16    includes responses to numerous comments, including the ones Plaintiffs cite out of

17    context. Given the small area of wetlands affected and the net positive effects of

18    mitigation, the Court cannot conclude that the agencies' finding of no significant

19    impact is arbitrary and capricious.

20    *B. Noise impacts*

21    Plaintiffs argue that the project would result in increased noise levels for 20

22    homes, and again quotes agency counsel's comments out of context. The Court

23    finds this argument to be without merit. The critical fact Plaintiffs omit is one of

24    causation: under the no-action alternative, 19 of those same 20 homes will still

25    receive significant noise impacts. Therefore, the project would cause increased

26    noise impacts for *only one of the 20 homes.* The Court thus agrees with

27    Defendants' argument that the finding of no significant noise impact is not

28    arbitrary and capricious.

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** * 7

*C. Community impacts*

Again, this is an argument that reads as very compelling until one realizes that Plaintiffs have quoted comments out of context and neglected to cite agency responses thereto. The potential impact here is to the Orchard Prairie community, through which the Bigelow Gulch road currently runs. Plaintiffs argue that Defendants failed to consider the project's impacts on this community.

Defendants point out that Plaintiffs again cite comments to the *draft* EA, and direct the Court to the final EA's analysis of the project's potential social and community impacts. (AR BG-7988 – 7999). The final EA concludes that impacts from the project "are expected to be limited to individual or small clusters of homes and outbuildings located along the alignment." (AR BG-7995). Defendants point out that the project would increase traffic, but would also include beneficial effects (e.g., widened shoulders would accommodate slow-moving farm equipment, and the project would move the road further away from a historic school, reducing traffic in certain key areas). Perhaps most importantly, the final EA incorporates and responds to the very comments that Plaintiffs argue Defendants failed to consider.

As with the wetlands analysis, the final EA shows that the agencies did take a "hard look" at the potential impacts. Under *Marsh*'s deferential standard, 490 U.S. at 377, the Court cannot substitute its judgment for the agencies', and it must generally defer to the agencies' resolution of factual disputes. After reading the EA's detailed findings in this area, the Court must agree with Defendants that the finding of no significant impact was not arbitrary or capricious.

*D. Visual impacts*

Plaintiffs also argue that Defendants overlooked the potential visual impacts of the project. The problem with this argument, as Defendants point out, is that visual impacts are inherently subjective, so it becomes more difficult to identify any "clear error in judgment," *Metcalf*, 214 F.3d at 1141. It is clear from a review

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT * 8**

1  of the final EA that Defendants did analyze the potential visual impacts in great

2  detail, and discuss how those impacts could be mitigated. (AR BG-7951 – 7973).

3  Their conclusion that, with mitigation, the effects would not be significant, does

4  not strike the Court as unreasonable. The Court therefore rejects this portion of

5  Plaintiffs' motion as well.

6  3. Cumulative impacts

7       Even where the identifiable impacts of a specific project are insignificant,

8  significantly cumulative impacts "can result from individually minor but

9  collectively significant actions taking place over a period of time." *Ocean*

10  *Advocates v. U.S. Army Corps of Engineers*, 402 F.3d 846, 868 (9th Cir. 2005)

11  (internal quotations omitted). "[I]n considering cumulative impact, an agency must

12  provide some quantified or detailed information; general statements about possible

13  effects and some risk do not constitute a hard look absent a justification regarding

14  why more definitive information could not be provided." *Id.* (internal quotations

15  omitted).

16       Plaintiffs argue that Defendants failed to adequately consider the cumulative

17  effects of the project, including the cumulative effects of past, present, and

18  reasonably foreseeable future actions. This argument suffers from the same defects

19  as many of Plaintiffs' other arguments: Plaintiffs spend a great deal of time quoting

20  and discussing public comments about cumulative impacts, and no time discussing

21  the final EA's responses to those comments. Moreover, Plaintiffs provide a

22  misleading characterization of the record. First, Plaintiffs argue that the EA

23  "admits that no cumulative analysis was completed for noise." (Plaintiffs' memo in

24  support, Ct. Rec. 39, pp. 18-19). However, the EA does analyze cumulative traffic

25  increases and concludes that "cumulative impacts are not expected for noise." (AR

26  BG-8001). Second, Plaintiffs insinuate that this project will permanently

27  accommodate increased traffic to North Spokane because the North Spokane

28  Corridor will never be completed. To support this point, Plaintiffs produced a

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** * 9

1   graphic showing the "never-to-be completed North-South Corridor." (Ct. Rec. 39,
2   p. 21). But nothing in the record supports this conclusion; rather, it appears to be
3   based solely on Plaintiffs' pessimistic speculation.

4        The final EA includes a relatively extensive cumulative impacts analysis
5   section, detailing impacts in sixteen subject areas such as noise, air, water, and land
6   quality, community, land use, etc. (AR BG-8000 – 8011). This section also looks at
7   the history of development in the area, as well as the specific future projects
8   Plaintiffs argue Defendants neglected to consider: development of the North
9   Spokane Corridor, including a widening of I-90. After review, the Court finds this
10  to be the kind of "detailed information" required by the case law, and the agencies'
11  review to be both well informed and well considered. Therefore, the Court rejects
12  this portion of Plaintiffs' argument.

13  4. Alternatives

14       "NEPA requires the agencies to 'study, develop, and describe appropriate
15  alternatives to recommended courses of action in any proposal which involves
16  unresolved conflicts concerning alternative uses of available resources.'" *N. Idaho*
17  *Cmty. Action Network v. U.S. Dep't of Transp.*, 545 F.3d 1147, 1153 (9th Cir.
18  2008) (quoting 42 U.S.C. § 4332(2)(E)). This provision requires agencies "to give
19  full and meaningful consideration to all reasonable alternatives," and applies to
20  both an EIS and an EA. *Id.* However, agencies have a lesser obligation to consider
21  obligations in an EA, and need only include "a brief discussion of reasonable
22  alternatives." *Id.* Under this lesser obligation, consideration of only two
23  alternatives (a no action alternative and a preferred alternative) may suffice. *Id.* at
24  1153-54. Agencies may define reasonable alternatives as those that serve a
25  project's identified purpose and need, but "[a]n agency may not define the
26  objectives of its action in terms so unreasonably narrow that only one alternative
27  from among the environmentally benign ones in the agency's power would
28  accomplish the goals of the agency's action." *Nat'l Parks & Conservation Ass'n v.*

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** * 10

*Bureau of Land Mgmt.*, 586 F.3d 735, 746 (9th Cir. 2009) (internal quotation omitted).

The final EA states that the purpose of this project "is to improve safety and operational conditions along the Bigelow Gulch/Forker corridor by: increasing roadway capacity; improving transportation system linkage; and accommodating existing and future freight linkages between areas north of Spokane (City and County) to the industrial and retail areas east of Spokane and Interstate (I)-90." (AR BG-7746). As noted above, research indicates that the Bigelow Gulch road currently suffers from a higher-than average collision (including fatal head-on collision) rates, and the primary purpose of the project is to alleviate that safety risk. (*Id.*).

Plaintiffs point out that the final EA evaluates only two alternatives to the proposed project: the preferred project and a no-action alternative. (AR BG-7769 – 7770). Plaintiffs argue that Defendants failed to consider a range of viable alternatives, including a two-lane configuration with a lower (35 mph vs the current and planned 45 mph) speed limit, and a two-lane configuration with wider shoulders and passing lanes.

Defendants argue that the final EA does examine a much wider array of alternatives, including a total of eight different alignments of a four-lane roadway; a "super-two" two-lane roadway with extra wide lanes, wide shoulders, and 100% passing zones; a two-lane, two-way roadway with passing lanes, climbing lanes, and/or crawl lanes; and a combination four-lane / two-lane roadway. (AR BG-7770 – 7784). In light of the project's overall goal to accommodate increasing traffic while minimizing safety concerns, the final EA considers and rejects each of these alternatives.

Plaintiffs' best argument is that Defendants failed to consider a 35 mph speed limit alternative along the entire corridor, which could arguably serve the project's stated goals with less impact. Plaintiffs are correct that the final EA does

1    not evaluate this alternative. It appears that the 35 mph alternative never made it
2    past the public comment phase – it was offered and rejected because "[a] 35 mph
3    speed limit (rural areas) would be unrealistically slow to the majority of drivers,
4    would be unenforceable and not proven to be safer." (AR BG-10105).

5        Viewed as a whole, the record demonstrates that Defendants adequately
6    considered alternatives. The final EA actually seems to go well beyond the "brief
7    discussion of reasonable alternatives" required by the case law. And the Court
8    finds the decision to reject a 35-mph alternative as unreasonable to be within the
9    agency's discretion. Therefore, the Court also rejects this portion of Plaintiffs
10   motion.

11   5. Alternatives under § 4(f)

12       § 4(f) of the Department of Transportation Act prevents the approval of a
13   project requiring the use of any publicly owned land from a public park or
14   recreation area unless: "there is no feasible and prudent alternative to the use of
15   such land, and (2) such program includes all possible planning to minimize harm"
16   to the recreational area. *Stop H-3 Ass'n v. Dole*, 870 F.2d 1419, 1422 (9th Cir.
17   1989) (quoting 49 U.S.C. § 303). § 4(f) is implicated here because the proposed
18   project will use about three-and-a-half acres of sports fields at East Valley Middle
19   School.

20       Plaintiffs' memo in support contains only one substantive paragraph alleging
21   a violation of § 4(f), essentially re-asserting the same arguments advanced in their
22   challenge to the final EA's consideration of alternatives under NEPA. Plaintiffs do
23   not substantially elaborate on this argument in their reply memo. Defendants
24   justifiably dismiss this argument as conclusory, but also set out a more detailed
25   defense of the final EA's § 4(f) analysis. The final EA considers three basic
26   alternatives: two different routes that would avoid the sports fields altogether, and
27   one alternative that would use less of the sports fields by constructing narrower
28   lanes. (AR BG-8022 – 8034). The EA recognizes the first two alternatives as

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** * 12

feasible (i.e., technically possible and constructible), but rejects them as imprudent because each alternative would require the displacement of numerous homes and churches, leading to increased traffic in existing residential areas. The EA rejects the final alternative as infeasible because "it would fail the test of sound engineering principles and practices." (AR BG-8026).

Again applying the arbitrary and capricious standard, the Court finds that the final EA correctly defines the terms "feasible and prudent" and contains an analysis of these factors that is more than sufficient. Plaintiffs' conclusory argument to the contrary is unpersuasive, and the Court rejects it.

### CONCLUSION

The Court finds Defendants' initial decision to prepare an EA rather than an EIS to be within the permissible bounds of agency discretion. The Court also finds that the final EA takes the requisite "hard look" at the proposed project's impacts, including cumulative impacts, and adequately considers alternatives to the project. Finally, the Court concludes that Defendants' ultimate finding of no significant impact is not arbitrary and capricious.

Accordingly, **IT IS HEREBY ORDERED:**

1.    Plaintiffs' Motion for Summary Judgment (Ct. Rec. 35) is **DENIED.**

2.    Defendants' Motion for Summary Judgment (Ct. Rec. 61) is **GRANTED.** The District Court Executive is directed to enter judgment against Plaintiffs and in favor of Defendants.

3.    The parties' motions to file excess pages and to expedite (Ct. Recs. 40, 41, 53, and 56) are **GRANTED.**

///

///

///

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** * 13

1    **IT IS SO ORDERED.**  The District Court Executive is directed to enter this

2    Order, forward copies to counsel, and **close the file.**

3        **DATED** this 8th day of March, 2010.

4

5

6                              *s/Robert H. Whaley*
                              ROBERT H. WHALEY
7                          United States District Judge

8

9

10   Q:\CIVIL\2008\Hamilton\sj.ord.wpd

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** * 14